FILED
CHARLOTTE, NC

MAY 18 2022

US DISTRICT COURT
WESTERN DISTRICT OF NC

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | DOCKET NO. 5:22-cr-00013-KDB |
| | ) | |
| v. | ) | <u>SUPERSEDING</u> |
| | ) | <u>BILL OF INDICTMENT</u> |
| | ) | |
| | ) | Violation: |
| SPENC'R DENARD RICKERSON | ) | 18 U.S.C. § 2113(d) |
| a/k/a Spencr Rickerson | ) | 18 U.S.C. § 1343 |
| | ) | 18 U.S.C. § 1028A |
| | ) | |

THE GRAND JURY CHARGES:

At the specified times and at all relevant times:

### Introduction

1. By approximately March 2020, Defendant SPENC'R DENARD RICKERSON, a resident of Claremont, North Carolina, was unemployed and receiving unemployment benefits from the state of North Carolina. RICKERSON turned to illegal means to obtain additional funds. Between June 30, 2020, and March 20, 2021, RICKERSON used false information to apply for a Paycheck Protection Program (PPP) loan and various Economic Injury Disaster (EIDL) loans in his own name and in the name of an identity theft victim. RICKERSON obtained approximately $20,833 in fraudulent funds from the PPP loan and obtained approximately $63,400 in fraudulent funds from EIDL loans. On or about March 18, 2021, RICKERSON committed an armed robbery of a BB&T Bank located in Newton, North Carolina. RICKERSON used the stolen funds from the fraudulent EIDL loan and bank robbery to pay bills and to buy cryptocurrency.

### Background

2. From at least March 2018 and continuing until February 2020, RICKERSON was a resident of Mooresville and Claremont, North Carolina and a full-time employee of Company A located in Mooresville, North Carolina.

3. On or about February 19, 2020, RICKERSON was placed on a leave of absence by Company A.

4. In or about March 2020, RICKERSON applied for unemployment benefits from the North Carolina Department of Commerce. RICKERSON received unemployment benefits between June 2020 and November 2020 and again between approximately March 2021 and

1

August 2021, and RICKERSON made various representations regarding his employment to the Department of Commerce, including:

      a.      In his initial application in March 2020, RICKERSON answered "No" when asked if he was currently self-employed;

      b.      In his subsequent application in March 2021, RICKERSON answered "No" when asked if he was currently self-employed;

      c.      On or about 4/18/2020, 5/16/2020, and 6/13/2020, RICKERSON answered "No" when asked if he was self-employed.

      d.      Between approximately July 2020 and November 2020 and again between approximately March 2021 and August 2021, RICKERSON made weekly and monthly assertions that he had earned "$0" or nothing in odd jobs or other employment.

## The CARES Act, EIDL Loans, and PPP Loans

5.      On March 13, 2020, President Donald J. Trump declared an emergency under Section 501(b) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act in response to coronavirus disease 2019 (COVID-19). On March 27, 2020, the President signed into law the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, which was designed to provide emergency financial assistance to the millions of Americans suffering the economic effects caused by the COVID-19 pandemic. The CARES Act established several new temporary programs and provided for the expansion of others, including programs created and/or administered by the Small Business Administration (SBA), to administer the emergency relief.

6.      One of the programs expanded by the CARES Act was the EIDL program, which was an SBA program that provides low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

      a.      EIDL proceeds could only be used for working capital to alleviate economic injury caused by the disaster (related to the COVID-19 pandemic) occurring in the month of January 2020, and continuing thereafter.

      b.      EIDL funds were issued directly from the United States Treasury, and an applicant applied through the SBA via an online portal. In the electronic application, the applicant certified that all of the information in the application was true and correct to the best of the applicant's knowledge and was warned that any false statement or misrepresentation to the SBA or any misapplication of loan proceeds may result in sanctions, including criminal penalties. The application also stated that the SBA relies upon the self-certifications in the EIDL application in determining whether the applicant was eligible for an EIDL.

c.  The EIDL application process collected information concerning the business and the business owner, including information regarding the business' gross revenue for the 12-month period preceding the disaster, which for COVID-19 was defined as January 31, 2020; the cost of goods sold for the 12-month period preceding the disaster; the number of employees employed by the business at the time of the disaster; information as to the criminal history of the business owners; and information regarding anyone that assisted in the preparation of the application.

7.  Another source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the PPP.

a.  In order to obtain a PPP loan, a qualifying business submitted a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan. In the PPP loan application (SBA Form 2483), the small business (through its authorized representative) was required to provide, among other things, its: (a) average monthly payroll expenses; and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation showing their payroll expenses.

b.  A PPP loan application was processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies. While the lender issued the PPP loan, the SBA provided a guarantee that the financial institution would be reimbursed. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

c.  PPP loan proceeds were required to be used by the business on certain permissible expenses such as payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expenses within a designated period of time and used a defined portion of the PPP loan proceeds on payroll expenses.

### EIDL Loans Submitted by RICKERSON

8.  On or about June 30, 2020, RICKERSON submitted and caused to be submitted EIDL Application *9875 to the SBA via an online submission. In the application, RICKERSON falsely claimed: (1) to own a business with 15 employees; (2) that the business was involved in "Business Services"; (3) that the business had been established in 2019; and (4) that the business had grossed $107,000 in revenue in the previous 12 months. RICKERSON falsely

3

answered "No" to a question regarding whether he was presently subject to an Indictment, Arraignment, or other formal charges. RICKERSON provided bank account information for his personal bank account ending in *6239 at Wells Fargo bank.

9. As part of EIDL Application *9875 to the SBA, RICKERSON requested an advance of up to $10,000.

10. RICKERSON certified under penalty of perjury that the information in EIDL Application *9875 was correct.

11. Upon receipt of EIDL Application *9875, the SBA approved the advance. On or about July 2, 2020, the SBA disbursed $10,000 to RICKERSON's Wells Fargo Account *6293.

12. The SBA subsequently approved RICKERSON's EIDL Application. On or about July 6, 2020, the SBA disbursed an additional $43,400 to RICKERSON's Wells Fargo Account *6293.

13. On or about June 30, 2020, RICKERSON submitted and caused to be submitted EIDL Application *8684 to the SBA via an online submission using the name and personal identifying information of identity theft victim J.R. In the application, RICKERSON falsely claimed that identity theft victim J.R.: (1) owned a business with 15 employees; (2) that the business was involved in "Business Services"; (3) that the business had been established in 2019; and (4) that the business had grossed $107,000 in revenue in the previous 12 months. RICKERSON provided bank account information for his personal bank account ending in *0599 at Bancorp bank.

14. As part of EIDL Application *8684 to the SBA, RICKERSON requested an advance of up to $10,000.

15. RICKERSON certified under penalty of perjury that the information in EIDL Application *8684 was correct.

16. Upon receipt of EIDL Application *8684, the SBA approved the advance. On or about July 1, 2020, the SBA disbursed $10,000 to RICKERSON's Bancorp Account *0599.

17. Between July 2, 2020, and September 17, 2020, RICKERSON spent the vast majority of the funds obtained from the SBA, generally on purchases of cryptocurrency, on repayment of a car loan, and on cash withdrawals.

18. On or about the dates below, RICKERSON submitted and caused to be submitted additional loan applications to the Small Business Administration (SBA) for the EIDL loans described in the chart below. However, the SBA did not issue these loans:

| a. | 1/6/2021 | Submission of application ending in *0209 to the SBA for an EIDL loan for a business in his own name with the purported business activity of "Personal Services" |

| b. | 1/6/2021 | Submission of application ending in *2662 to the SBA for an EIDL loan for a business in the name of identity theft victim J.R., using the identity theft victim's maiden name, with the purported business activity of "Personal Services" |
| c. | 1/11/2021 | Submission of application ending in *5428 to the SBA for an EIDL loan for a business in his own name with the purported business activity of "Miscellaneous Services" |
| d. | 1/14/2021 | Submission of application ending in *1930 to the SBA for an EIDL loan for a business in his own name in the purported industry of "Personal Services" |
| e. | 1/14/2021 | Submission of application ending in *1028 to the SBA for an EIDL loan for a business in the name of identity theft victim J.R., with the purported business activity of "Limosine [sic] & Transportation" |

### **PPP Loan Submitted by RICKERSON**

19. Cross River Bank was a financial institution whose deposits were insured by the Federal Deposit Insurance Corporation ("FDIC"). Cross River Bank was headquartered in Fort Lee, New Jersey. Cross River Bank participated in the SBA's PPP as a lender and, as such, was authorized to lend funds to eligible borrowers under the terms of the PPP.

20. On or about March 20, 2021, RICKERSON submitted and caused to be submitted a Lender Application Form, application *2985, for a PPP loan to Cross River Bank. In the application, RICKERSON requested $20,833 to pay payroll costs and utilities of a business in his own name that was purportedly in the business of "New Single-Family Housing Construction."

21. In this application, RICKERSON falsely claimed to own a single-family housing construction business, with one employee, and that the business had existed for more than two years. RICKERSON said that he would use $1 to pay company utilities and that he would use $20,832 for Payroll Costs.

22. RICKERSON's application for the PPP Loan from Cross River Bank resulted in Loan *86-06 being created and $20,833 being disbursed to RICKERSON to his Wells Fargo Account *6293.

5

## COUNT ONE
(Bank Robbery – 18 U.S.C. § 2113)

23. On or about March 18, 2021, in Catawba County, within the Western District of North Carolina, the Defendant,

**SPENC'R DENARD RICKERSON
a/k/a SPENCR RICKERSON**

by force, violence and intimidation did take from the person or presence of another, a sum of money belonging to and in the care, custody, control, management, and possession of BB&T Bank, located at 12 North Main Avenue, Newton, North Carolina, a bank whose deposits were then insured by the Federal Deposit Insurance Corporation, and in doing so did assault and put in jeopardy the life of another person by the use of a dangerous weapon, in violation of Title 18, United States Code, Sections 2113(a) and 2113(d).

## COUNT TWO
(Wire Fraud Scheme – 18 U.S.C. § 1343)

24. Paragraphs 1 through 22 of this Superseding Bill of Indictment are re-alleged and incorporated herein by reference as though fully set forth herein.

25. Beginning in or around June 2020 and continuing through in or around at least April 2021, in Catawba County in the Western District of North Carolina and elsewhere, the Defendant,

**SPENC'R DENARD RICKERSON
a/k/a SPENCR RICKERSON**

with the intent to defraud, having knowingly devised and intended to devise a scheme and artifice to defraud, and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, did knowingly transmit and cause to be transmitted, by means of wire communications in interstate commerce, writings, signals, pictures, and sounds for the purpose of executing such scheme and artifice, *to wit*, electronic loan applications, wire transfers, and other electronic transactions in interstate and foreign commerce.

26. The purpose of the scheme to defraud was for RICKERSON to unjustly enrich himself by submitting and causing to be submitted fraudulent EIDL and PPP loan applications for fictitious businesses.

27. The manner and means by which RICKERSON sought to accomplish the object and purpose of the scheme and artifice included, among others, the following acts by RICKERSON on or about the following dates, in Catawba County, within the Western District of North Carolina and elsewhere:

|    | DATE      | ACT                                                                                                                                                                                                                                   |
|----|-----------|---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| a. | 6/30/2020 | Submitted and caused to be submitted fraudulent application ending in *9875 to the SBA for an EIDL loan for a business in his own name with the purported business activity of "Business Services"                                    |
| b. | 6/30/2020 | Submitted and caused to be submitted fraudulent application ending in *8684 to the SBA for an EIDL loan for a business in the name of identity theft victim J.R. with the purported business activity of "Business Services"          |
| c. | 1/6/2021  | Submitted and caused to be submitted fraudulent application ending in *0209 to the SBA for an EIDL loan for a business in his own name with the purported business activity of "Personal Services"                                    |
| d. | 1/6/2021  | Submitted and caused to bs submitted fraudulent application ending in *2662 to the SBA for an EIDL loan for a business in the name of identity theft victim J.R., using the identity theft victim's maiden name, with the purported business activity of "Personal Services" |
| e. | 1/11/2021 | Submitted and caused to be submitted fraudulent application ending in *5428 to the SBA for an EIDL loan for a business in his own name with the purported business activity of "Miscellaneous Services"                               |
| f. | 1/14/2021 | Submitted and caused to be submitted fraudulent application ending in *1930 to the SBA for an EIDL loan for a business in his own name in the purported industry of "Personal Services"                                               |
| g. | 1/14/2021 | Submitted and caused to be submitted fraudulent application ending in *1028 to the SBA for an EIDL loan for a business in the name of identity theft victim J.R., with the purported business activity of "Limosine [sic] & Transportation" |
| h. | 3/20/2021 | Submitted and caused to be submitted fraudulent application to Cross River Bank for PPP loan for a business in his own name with the purported nature of the business listed as "New Single-Family Housing Construction"              |

28.     RICKERSON used the fraudulent proceeds obtained from his scheme to defraud to make personal payments including the purchase of cryptocurrency and payment of bills.

All in violation of Title 18, United States Code, Section 1343.

## COUNT THREE
(Aggravated Identity Theft – 18 U.S.C. § 1028A)

29.     Paragraphs 1 through 22 of this Superseding Bill of Indictment are re-alleged and incorporated herein by reference as though fully set forth herein.

30.     On or about June 30, 2020, in the Western District of North Carolina and elsewhere, the defendant,

**SPENC'R DENARD RICKERSON**
**a/k/a SPENCR RICKERSON**

did knowingly use, without lawful authority, a means of identification of another person, namely, J.R., during and in relation to a felony violation enumerated in 18 U.S.C. § 1028A(c), to wit, wire fraud in violation of 18 U.S.C. § 1343 as alleged in Count Two, knowing that the means of identification belonged to another actual person.

In violation of Title 18, United States Code, Section 1028A(a)(1).

## NOTICE OF FORFEITURE AND FINDING OF PROBABLE CAUSE

Notice is hereby given of 18 U.S.C. § 982 and 28 U.S.C. § 2461(c). Under Section 2461(c), criminal forfeiture is applicable to any offenses for which forfeiture is authorized by any other statute, including but not limited to 18 U.S.C. § 981 and all specified unlawful activities listed or referenced in 18 U.S.C. § 1956(c)(7), which are incorporated as to proceeds by Section 981(a)(1)(C). The following property is subject to forfeiture in accordance with Section 982 and/or 2461(c):

      a. All property which constitutes or is derived from proceeds of the Count Two violation set forth in this superseding bill of indictment; and

      b. If, as set forth in 21 U.S.C. § 853(p), any property described in (a) cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, all other property of the defendant/s to the extent of the value of the property described in (a).

The Grand Jury finds probable cause that the following property is subject to forfeiture on one or more of the grounds stated above: a forfeiture money judgment in the amount of $84,233 such amount constituting the proceeds of the Count Two violation.

FOREPERSON

DENA J. KING
UNITED STATES ATTORNEY

LAMBERT GUINN
ASSISTANT UNITED STATES ATTORNEY

JENNY G. SUGAR
ASSISTANT UNITED STATES ATTORNEY